Rotation Act, AB 1595 Case number 14-39, Veteran of Camp v. Mary Berghuis, Rural, Oregon, United States, 15 minutes to 5. Mr. Rosenberg, for the appellate. Good morning, your honors. Counsel. May it please the court. The first thing I want to say is that the standard of review is, of course, determined by, in the first instance, the AEDPA. And that has really two parts. We are extremely familiar with the AEDPA standard. Right. But I want to nevertheless point out two things. First, that the second part of the AEDPA that requires a determination, talks about a determination of fact in the light of evidence presented. There is no question in this case arising under that part of the AEDPA. There are no factual disputes. Any reference to factual determinations are factual determinations of legal facts. And those are not something that arises out of the evidence because counsel speaking to the court is not evidence. That's just argument. So in the first instance, there really is no standard of review having to do with a factual dispute. And the second thing I want to say is that that leaves really two questions, two questions that were presented below. Whether or not there was manifest necessity for a mistrial, which of course would have allowed, if there was, retrial of the defendant, or consent. Counsel for the people, the government says that the issue of manifest necessity is before this court, and I say no. The counsel for the people point to a case decided by this circuit, Le Fleur, which says that you are not bound by determinations of the district court, or of the, pardon me, of the state courts, but that's not what happens. What Le Fleur says is hypothetical questions, which were not actually adjudicated on the merits, are not binding on this court with respect to the deference the AEDPA requires. Well, I mean, the Michigan Supreme Court said he consented to the mistrial, right? Consent is the only issue. Well, regardless of whether it's the only, it's certainly an issue here. That's right. Their obligations show that determination is unreasonable, and he had percents. Twice, Mr. Camp's attorney did ask for a mistrial. So how is the determination unreasonable by the Michigan Supreme Court? Two things about that determination. In the first instance, of course, the district court in Michigan, the circuit court in Michigan, decided to grant the mistrial. The court of appeals in the unanimous decision reversed that and found no consent, and the Michigan Supreme Court asked that two things be briefed before it, namely manifest necessity and consent. So presumably they got these briefs. When it made its decision and issued that decision, it said that we find that the district court did not, that there was no, and I want to get this right, the district court found that the district court did not clearly err in finding that the defendant consented to the mistrial. It said that it did not find clear error. Now, clear error, Your Honors, is a question of determination of fact. That's the wrong standard. Is there a Supreme Court case that says that's the wrong standard as of this specific issue? Every case that I read says that this is a question of law, constitutional law, and that that is decided, you know, not... You understand that under AEDPA, we have to look to Supreme Court authority, not our authority, not some other authority. Absolutely. Is there a Supreme Court case that you can point us to that would support the proposition that the Michigan Supreme Court was incorrect to speak in terms of clear error here? I assume you're implying it's a... They're making a... They thought it was a factual determination? I'm saying that by saying clear error, the only way clear error is determined is a factual fact. There is a Supreme Court case that says consent to a mistrial for purposes of double jeopardy is a legal issue, a Supreme Court case that says that. I believe Dinitz says that, Judge. Sorry, which case? Yes. I didn't hear the name, that's all. Dinitz, D-I-N-T-Z. All right. I believe that says that that's a question of law. I believe also that Joel says that because what all of those cases have said, and there are cases here as well, that say the fact of whether a person consents, even if he uses the word mistrial, asks for a mistrial, is not determinative of whether that's what he really wants. In Dinitz, the language is defendant confronted with an error introduced by the prosecution, which is exactly what happened here. The error was introduced by the prosecution. That was a finding of the circuit court. There's always faced with a Hobson's choice, and he either consents to go forward with a trial in which there's error that is against, that harms him, or he asks for some kind of relief. And the fact that he asks for the relief by phrasing it in terms of a mistrial is not determinative of the issue. That makes it a question of law. That makes a question of whether or not these words mean that. It's never the case that the questions of law are determined merely on pure, simplistic reading of an argument. It's always a question of what does this mean. So in this particular case, then, the words used by counsel in asking for a mistrial did not mean consent. No, he did not consent. Why? Well, because, again, going back to Dinitz. And I rely heavily on Dinitz. In Dinitz, the Supreme Court said what really is determinative is that the defendant control whether or not he consents to a mistrial. So the defendant's determination, he is the primary person to control that. And in this case, if you read through all of this language, it's true. What he always says is, I want the introduction, I want the relief that will tell this jury that he wasn't convicted. That's the error the prosecution introduced, that somehow or other he has committed other acts. And not only that, in their opening, the prosecution says, boys, repeats boys, and we're not talking about the fact that this is the only case. We're not saying this is the only instance where he's done this. That's a negative pregnancy, Your Honor, where you say, well, I didn't steal a million dollars. I'm not denying that you stole $900,000. That's exactly what happened there. The prosecution suggested by negative inference that, in fact, there are other cases, even while denying that there were. So the prosecution really is at fault here, a serious fault. Now, given that fault, the defendant had to do something, and he did, he asked for some sort of relief. And in the end, even the circuit court judge below said, look, what is it that you really want? And at that point, still maintaining control, and that's his right to control it, I want either that you introduce the decision of the acquittal in Livingston County, or that you dismiss these charges. That's really what counts. That's what Dennett says. He is the primary controller of whether he consents, and that language is not consent. Language is the exact opposite of consent. What if he were to say, hypothetically, well, Your Honor, my preference would be to enter judgment in our favor, or whatever, I mean, the thing that you just said. But in the alternative, as a backup, at least I want a mistrial. The one thing I don't want is just to continue. Why isn't that consent? I mean, consent doesn't only attach to the thing you want most, right? It could be something that you say is acceptable, but not your first choice. Isn't that consent? I suppose that could happen, but that's not what happened here. Why? He didn't say that. He said it twice. He said it once, but that's not dispositive. What he said at the last time, when the judge said to him, this is your last chance, what do you really want? That's what really counts. What's the Supreme Court case, though? We have such a constrained review under AEDPA. The Supreme Court has told us that a number of times. What's the Supreme Court case that says we have to look at the last exchange, not the first two? It doesn't say the last exchange. It says he controls. He controls to, in the end, it says, the language within it says, he is the primary controller in the end, and the final responsibility is his. Well, final responsibility is what he says last. What he says last in this case was I don't want this. I want either Livingston County introduced, or I want to have a case dismissed, the charges dismissed. I have only a few seconds. If I may use some of my time that I reserved for rebuttal, I would go on with the court's permission. I'm not sure how much time you reserved for rebuttal, but you may certainly use it at this point. Okay. I'll stop here and let the prosecutor go on. Thank you. Good morning. May it please the Court, Andrea Christensen Brown of the Michigan Attorney General's Office, appearing on behalf of the warden. Just briefly, I believe that, I just want to make clear, AEDPA is the standard here. It's the standard of review that's absolutely applicable. In Michigan, when a jury is dismissed for deliberations, they're told that attorney comments are not evidence. In the AEDPA context, the reference to evidence in D1, D2, is the record as a whole. So I think that we just disagree about what the standard of review is. But that being said, it is well established that retrial is barred after jeopardy attaches unless one of two circumstances exists, consent and manifest necessity. And we believe in this case that both are present here. Did the Michigan Supreme Court address and discuss manifest necessity? No, Your Honor, it did not. It did not. It limited its reversal of the Michigan Court of Appeals opinion just to consent. However, I would like to point the court back to the trial court decision on the defendant's motion to dismiss when charges were brought forth again. And the court there said not only that there was consent but that there was also manifest necessity. So I would just point the court that that was a trial court determination. And while perhaps not entitled to AEDPA deference, under Arizona v. Washington, it's entitled to special respect. So even assuming we get past the consent issue, there is manifest necessity here regardless. However, I think that the issue starts and stops with consent. As Your Honor stated several times while my friend was up here, he twice requested a mistrial. Now, this is a limited colloquy that we have here. We're talking about 10 pages or so of the record. His first request was made during a bench trial or bench trial, during a bench conference. He said, I want to ask for a mistrial. And then the jury was dismissed, and he said, I want to ask for a mistrial if the court is not going to admit evidence of the acquittal. Those are two requests. Now, I understand what my friend is saying on the other side about his last exchange with the court, saying that he either wanted the charges to completely be dismissed or the acquittal to come in. However, he never withdrew his request for a mistrial, and that's essential here. How would you do that? How would you withdraw your request? During the colloquy, well, simply to answer your question, he could just say, I withdraw my request. He did not do that? No. And even if he didn't do that, his next option would have been to object to the court's actual grant of the mistrial. Now, if that was not the outcome that he wanted, he wanted dismissal or the acquittal admitted into evidence. That's not what the court was doing. That was his chance to preserve his objection, and he did not do that. That's implicit consent under this court's decision in United States v. Gantley. So I think that when the colloquy, when this 10-page colloquy is read as a whole, then we see two requests for a mistrial, then some back and forth with the judge deciding what would be proper, whether or not the evidence should come in, whether the prosecution would be prejudiced by this evidence coming in, and then the court made its decision that a mistrial was necessary. And that was not objected to. That's implicit consent. So there's either, I would say that there's actually explicit request for a mistrial, there's implicit consent, and there's also manifest necessity in this case. Now, just to briefly comment on Dennett's and that the defendant has the ultimate control over it, the language is actually that the defendant must retain primary control of the avenue to be followed. That does not mean, and Dennett does not say, that he gets to dictate the outcome. And that's essentially what I think he's asking for here. He doesn't get to dictate the outcome. He suggested three options for the trial court. One was a mistrial. One was the evidence coming in, the evidence of the acquittal coming in. And the third one was to dismiss all charges. And the trial court made its decision to follow one of them. So he did maintain control because he gave three suggestions. And if the defendant did not like the one that the court chose, that was his opportunity to object and preserve his objection for the motion to dismiss that was going to follow. I guess he could have said, Your Honor, there's been a misunderstanding here. When I said mistrial, I was actually thinking of something else. Correct, correct. So he had two opportunities. One, just to flat out say, I'm withdrawing my motion for a mistrial. Or he could have objected if that was an option that he did not want. And that did not exist here. So I've made all of my points. I am happy to address any other questions if the court has them. But I would just implore the court to read that 10-page colloquy. It's on Record No. 6-6, and I believe it's ID numbers 453 through 461. I'd like you to discuss, if you don't mind, the degree of discretion that the state Supreme Court's decision should be accorded. How thorough was the Supreme Court in discussing this issue and how much analysis did the court provide? The analysis here by the Michigan Supreme Court, it was a paragraph, to be honest. But we also know that in the AEDPA context, under Harrington v. Richter, that even in the absence of a reasoned opinion, and this, I would submit, is a reasoned opinion. One paragraph concerning a fairly substantial constitutional issue is a reasoned opinion? Well, even if... Well, I would submit that it is. But even if the court said the decision of the Michigan Court of Appeals is reversed, even if they said that, Harrington v. Richter says that that is entitled to deference and that the burden is on the petitioner to show that there's no reasonable excuse for that decision or no reasonable excuse to deny relief. And frankly, the court doesn't need to do that here. But we actually have a finding that the trial court, that their decision was reasonable, and that was it. And that under AEDPA is entitled to deference, and he has not overcome that burden. Anything else? Thank you. Thank you, counsel. Rebuttal? Your Honor, I want to point out first that the prosecutor has interpreted what the defendant asked for in the end. When he asked for either let the Livingston County verdict in or dismiss these charges, the prosecutor added a third alternative. Why did she do that? She did that because she knows that it needs interpretation, and she offered one to this court. Because he started the issue of the mistrial. He asked for the mistrial, so it seems a little untoward to say that the prosecutor is making this up out of whole cloth and adding it in. Well, not out of whole cloth, but tattered cloth. The fact is that he always asked for, I want the Livingston County verdict in, and he also said, or a mistrial. But his request for a mistrial in every instance was predicated on, well, if this is granted in the court itself, the circuit court in Michigan itself said, well, if I grant a mistrial, I'm going to have trouble with double jeopardy when it goes up to the court of appeals. So the court itself in Michigan, the circuit court in Michigan understood that that dismissal was based on prosecutorial errors and prejudiced the defendant and that there was a double jeopardy problem if I grant a mistrial. So no one was fooled by his use of this language. I don't deny that it was clumsy, but the fact is that this all happened in a minute. There's 10 pages, as counsel pointed out, of colloquy. There was no adjournment. There was no recess to brief this. There was no considerations. All off the cuff. And in the end, when he pulls his mind together, he says what he really intends. And I want to say that Dinitz says that the important consideration for purposes of double jeopardy clause is that defendant retain. That is to keep it. Retain. Every word is important here. Retain primary control over the course to be followed in the event of such an error. Well, he did retain it in the end. He started out by trying to stop the proceeding so he could bring to the court's attention what the problem was, which is how do you stop a judge from going on with a trial? You say, I want a mistrial.  Otherwise, it goes right on. We've all experienced that as litigants. So that's number one. Number two, it's clear that the prosecutor wants you to interpret things. But the defendant wasn't the only one to ask for a mistrial. The prosecutor also asked for a mistrial, recognizing that if the verdict in Livingston comes in, they have a problem. Why shouldn't the inference be that the prosecutors was granted that? That, in fact, is what the Court of Appeals in Michigan, by its unanimous decision, said. So the fact is that interpretation has gone on. The paragraph in which the court, the Michigan Supreme Court, reversed this is short. On order of the court, the application will leave to appear the September 17 judgment of the circuit court is considered an oral argument of the party shall address those. On May 11, 2010, the court heard oral argument on the application to leave to appeal the September 17, 2009 judgment of the Court of Appeals. On order of the court, the application is again considered in lieu of granting leave to appeal. We reverse the judgment of the Court of Appeals because the trial court did not clearly err in finding that the defendant consented to the mistrial. They didn't clearly err in finding. He did. Actually, well, declared by the court. Where a defendant consents to a mistrial double jeopardy considerations do not apply. We'll agree with that. On remand... Counsel, you will see that your red light has come on. Ah, I was looking down. I apologize. Thank you for your attention. We do have substance of that order in front of us. Case will be submitted. Clerk may call the next case. Thank you.